Charles H. COMBS,
Rosada K. Combs and
Transamerica Title Insurance Company,
*Appellants,*

*v.*

Mark E. LOEBNER,
*Respondent.*

Mark E. LOEBNER,
*Counterclaim Plaintiff - Respondent,*

*v.*

TRANSAMERICA TITLE
INSURANCE COMPANY,
Charles H. Combs and Rosada K. Combs,
*Counterclaim Defendants - Appellants.*

(A8809-05093; CA A62836)

814 P2d 531

Janice M. Stewart, Portland, argued the cause for appellants. With her on the briefs were Sara V. Fraser and McEwen, Gisvold, Rankin & Stewart, Portland.

Robert J. Ericsson, Portland, argued the cause for respondent. With him on the brief were Julie K. Bolt and Martin, Bischoff, Templeton, Ericsson & Langslet, Portland.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Plaintiffs Combs and defendant entered into a contract, drafted by plaintiff Charles Combs, an attorney, by which the Combses purchased real property from defendant, on which they planned to build a house. Plaintiff Transamerica Title Insurance Company (Transamerica) issued a preliminary title report and also insured the Combses' title. The property description in the report was inaccurate in that part of the described property had been conveyed to the city of Oregon City in 1939 before defendant acquired his interest. Charles Combs incorporated the inaccurate description into the contract.

After the mistake came to light, the Combses claimed and Transamerica paid the limits of the title insurance policy. The Combses then brought this action for, *inter alia,* breach of contract and claimed damages for loss of value and for expenses that they incurred because the building site for the house had to be relocated to a different part of the described property. Transamerica joined in the action, claiming that it is entitled to recover from defendant on a subrogation theory. Defendant counterclaimed for reformation of the land sale agreement and also asserted that he was entitled to contribution and indemnity from Transamerica for its negligence in connection with the inaccurate description.[1]

The trial court denied defendant's reformation claim. It then submitted the other claims to the jury, which found for defendant on the breach of contract claim. Under the verdict form submitted to the jurors, they were to answer no further questions if they made that finding. Plaintiffs appeal from the resulting judgment. We affirm.

The first three assignments ascribe error to the court's refusal to use a special verdict form, to its refusal to give a requested instruction and to its instruction that the jury was to determine whether defendant breached the contract. The common theme of the assignments is that defendant breached the contract as a matter of law and that only the issue of damages should have been sent to the jury. However, that argument is correct only if plaintiffs are right

---

[1] The other claims in the action are not relevant to the appeal.

in their underlying supposition that a finding of liability had to follow from the undisputed fact that defendant could not convey all of the property described in the contract.

There were at least two issues that went to the jury that would have permitted it to find that defendant was not liable, notwithstanding his inability to perform as agreed: first, that the Combses as buyers had to use "reasonable care to safeguard [their] own interest[s]" and could not "rely blindly" on defendant's representations about the extent of his ownership; and, second, that plaintiffs were estopped by their own insertion and use of the inaccurate description in the report and the contract. Plaintiffs assign error to the instructions and rulings that resulted in the submission of those issues to the jury. Consequently, we address those claims of error first. If the issues were properly submitted, we need not further address the first three assignments.

■ Although defendant made statements about what land he owned, there is no contention that they were knowingly false, and there was evidence that correct information was available to or accessible to the Combses and to Transamerica. They argue that the rule that a buyer must use reasonable care applies only in fraud cases, *see, e.g., Haag v. Cembellin,* 89 Or App 75, 748 P2d 143 (1987), *rev den* 305 Or 273 (1988), which this is not. Defendant answers that *Van Horn Construct'n Corp. v. Joy et ux.,* 186 Or 473, 207 P2d 157 (1949), was also not a fraud case and is contrary to plaintiffs' argument. The court said there:

> "[D]efendants cite a number of Oregon cases involving fraudulent sales of real property. In each of those cases the court, in commenting upon the right of plaintiff to recover damages because of fraudulent representations made by defendant, pointed out, what seems to be a well-established principle of law, that a purchaser must use reasonable care for his own protection and should not rely blindly upon statements made by a seller or his agent, and that failing to do so he can not recover on the ground that he was misled by the seller.
>
> "Defendants also call our attention to Pomeroy's Specific Performance of Contracts, 3rd Ed., §§ 442 to 444, inc. In § 442 it is said that the vendee is not entitled to compensation when he had notice, before entering into the contract, that the vendor's title was defective, or that the vendor's interest

was partial, or that the subject-matter was deficient; § 443 states that if the purchaser, at the time of the contract, has constructive notice of the defect, or of other facts which will prevent a compliance by the vendor with all the terms of the agreement, he loses all right to compensation. Section 444 enunciates, what appears to be the general rule, that the purchaser's right to compensation for a defect in title, or in the subject-matter may be cut off 'by his unreasonably negligent conduct, or omission to use ordinary prudence in making the purchase. Thus, where the defect would have been easily discovered if the purchaser had used the care and forethought of an ordinarily prudent man, and by simply making reasonable and proper inquiries about the state and condition of the property, and he neglects to use such care, and omits to make any inquiries, he thereby precludes himself from the right to claim compensation, for equity will not aid persons who have been unreasonably careless. A man cannot rush headlong, and with his eyes shut into a bargain, and then require the court to relieve him from the consequences of his own foolishness.' " 186 Or at 481.

However, plaintiffs rely on the later decision in *Wittick v. Miles,* 274 Or 1, 545 P2d 121 (1976), where the court said:

> "If the written contract provides that the vendor shall convey the premises free from encumbrances, it is immaterial that the purchaser had knowledge, at the time of contracting, that there was an encumbrance on the property. The vendor assumed the risk of acquiring clear title and the purchaser has the right to insist on the terms of the contract, *Crahane et al v. Swan,* 212 Or 143, 154-155, 318 P2d 942 (1957)." 274 Or at 6.

Defendant explains that *Wittick* is inapposite, because:

> "In *Wittick,* the buyers sued for specific performance of an earnest money agreement for the purchase of a cattle ranch. At the time the parties negotiated the earnest money agreement, the land was encumbered by a six-year lease. The buyers knew about the lease at the time of contracting. The earnest money agreement, however, promised conveyance of fee simple title to the ranch free of encumbrances. The court held that but for the equitable interests of the lessees, the buyers would be entitled to specific performance of the contract regardless of whether the buyers had knowledge of the encumbrance at the time of contracting. 274 Or at 6.

"*Wittick* is not applicable to plaintiffs' breach of contract claim. *Wittick* simply does not address the issue of whether a party entering into a contract has a duty to use reasonable care to protect his own interests. The case at bar does not involve encumbered property; it involves a mistake by the buyer in describing the land to be conveyed. The seller in *Wittick* could pay off the lessees and convey clear title. Loebner cannot convey title to property owned by Oregon City."

Defendant's conclusion is correct. In *Crahane et al v. Swan,* 212 Or 143, 318 P2d 942 (1957), the case cited in *Wittick* for the proposition on which plaintiffs rely, the court said:

"The appellant cites *Wetherby v. Griswold,* 75 Or 468, 147 P 388 [1915], relying on the rule found at page 475 as quoted from [36] Cyc 742 and reading:

" 'If the purchaser at the time of entering into the contract was aware of the defect in the vendor's interest or title, or deficiency in the subject-matter, he is not, on suing for specific performance, entitled to any compensation or abatement of price.'

"The foregoing rule is, however, subject to an exception: When the written contract between the parties provides that the vendor shall convey the premises free from encumbrances, it is immaterial that the purchaser had notice at the time of the contract that there was an encumbrance on the property. The purchaser has a right to insist upon the terms of his contract. The vendor, agreeing to sell land, is bound to know whether he has title, and is answerable if he is unable to fulfill his contract, for a vendor who agrees to convey land at a time when he knows he has no right to convey assumes the risk of acquiring title and making the conveyance or responding in damages for the vendee's loss of his bargain." 212 Or at 154.[2]

Defendant also suggests that it would make no sense for the general rule requiring reasonable care on the buyer's part to apply only in cases of fraud and not in cases where the seller's incorrect communications or assumptions about title are innocent. That suggestion, too, is correct. The court

---

[2] Although the cited cases involved specific performance, the duties that they assign sellers and buyers are also applicable in this context.

properly instructed the jury that the Combses had a duty to use reasonable care.

■ Defendant's estoppel defense was added by amendment to conform to the proof at trial. Plaintiffs did not object to the evidence of estoppel. *See Kendricks v. Mychal Thompson Enterprises, Inc.,* 107 Or App 453, 812 P2d 38 (1991). They argue, however, that defendant could not assert the defense, because:

> "Defendant failed to establish his right of reliance upon the faulty legal description Combs copied from the preliminary title report. In fact, defendant's own expert witness testified that in Oregon defendant did not have a right to rely upon a description from the preliminary title report. Furthermore, defendant did not have his own attorney review the documents prepared by Combs, even though Combs advised him that he may want to have his attorney review the contract.

> "Defendant is further precluded from estopping the Combs because he had actual or constructive knowledge of the real condition [of] the title. *Hess v. Seeger,* 55 Or App [746, 761, 641 P2d 23, *rev den* 293 Or 103 (1982)]."

Even assuming that that argument is cognizable under an assignment challenging the allowance of an amendment to a pleading, with no concomitant assignment relating to taking the defense away from the jury, we disagree with it. All of plaintiffs' points go to weight, and there was evidence to allow the jury to find the opposite of what plaintiffs contend. Because both the estoppel defense and the issue of whether plaintiffs used reasonable care were properly sent to the jury, it also follows that the court did not err in refusing to instruct the jury that defendant was liable as a matter of law.

Plaintiffs also assign error to the admission of testimony—and the related denial of a mistrial—pertaining to what they characterize as settlement negotiations. Defendant does not accept that characterization and says that the testimony related instead to a demand for payment of less than the damages ultimately sought. Whichever characterization is correct, the testimony was elicited on cross-examination as impeachment of related testimony that plaintiffs' counsel had elicited in her direct examination of the witness. Plaintiffs then pursued the settlement issue overtly

in their redirect examination. They demonstrate no reversible error.

■ Plaintiffs next assign error to the admission of testimony and the giving of an instruction on the implied duty of good faith and fair dealing, an issue not raised by the pleadings. The testimony was given by an officer of Transamerica and by an "expert," and it related to whether Transamerica would have paid the Combses' claim had it been aware of the hypothetical fact that Charles Combs knew about the status of the title when he drafted the contract. The only direct bearing of the evidence on the claims between plaintiffs and defendant was that it had some makeweight tendency to support the defense that Transamerica acted as a "volunteer" in making payments on the policy to the Combses. Because of its finding on the breach of contract claim, the jury did not have to reach Transamerica's subrogation claim or the defenses to it. If there was error, it was not conceivably prejudicial.

Plaintiffs' remaining assignments do not establish error or require discussion.

Affirmed.